## *Propr's of* TICONIC BRIDGE *vs.* DANIEL MOOR.

Where the Court of Sessions licensed certain persons, then directors of a Bridge corporation, as ferrymen to keep a ferry near where the corporation bridge had been carried away by a freshet, the income of which ferry was to be appropriated towards rebuilding the bridge; and afterwards the directors of the corporation, being a new and different board from those licensed, made a parol lease of the ferry and ferry-boat to the defendant, who used them for the term; it was *held*, that the corporation could maintain an action, and in their own name.

ASSUMPSIT, for the use of a ferry and ferry-boats from *April* 13, 1833, to *May* 17, in the same year. The directors of the corporation made application to the Court of Sessions for this County, at the *April* term, 1826, to be licensed as ferrymen, to keep a ferry across the river from *Waterville* to *Winslow*, and requested that the profits of the ferry should be appropriated towards repairing the *Ticonic* bridge, which had before then been partially carried away and rendered impassable. At the same term the Court granted the prayer of the petition, and appointed

the individuals composing the board of directors ferrymen. The bridge was repaired in 1826 and 1827, but again destroyed in 1832, and the then directors employed a ferryman to take charge of the ferry for the corporation, who did so for that season, and also by their direction built a ferry-boat for them, the same mentioned in the writ, and received his pay out of the proceeds of the tolls of the ferry by the consent of the plaintiffs, and paid them the balance. On the trial in the C. C. P. before *Smith J.* it was proved, that an auctioneer, acting for the plaintiffs, sold at auction the right to use the ferry and boat for the season or year, 1833, to the defendant. There was evidence on the part of the plaintiffs tending to shew, that it was agreed upon at the auction, that if the license aforesaid should be taken away before the expiration of the season, the defendant was to pay in proportion to the time he used the ferry and boat ; and there was evidence on the part of the defendant tending to show, that the hiring was for the whole season and that he was not to pay in proportion to the time he had the use of the ferry. It was further proved, that in *April,* 1833, the Court of County Commissioners revoked said license, and appointed another person ferryman. It was not proved, that the auctioneer ever made any memorandum of the sale, nor was it shewn, that the plaintiffs ever passed any vote in relation to said ferry or ferry-boat, or in any way by vote sanctioned the doings of the auctioneer or of the directors in regard to the ferry or ferry-boat, nor was any vote shown authorizing the bringing of this suit. It was however proved, that the acts of the auctioneer were authorized by three of the then directors of the bridge, but who were not the persons, who were directors, when the license was granted, of whom one owned no stock in the corporation ; and that they were a majority of the board, if one without owning stock could be legally a director, but not otherwise. One of the directors, who had been appointed ferryman, objected to the sale at auction. The instructions of *Smith J.* to to the jury are recited in the opinion of the Court in this case.

The jury found a verdict for the plaintiffs, and the defendant excepted to the instructions of the Judge.

*Wells,* for the defendant, contended, that the instructions were erroneous, and that the action could not be maintained.

. 1. Because the ferry, if it belonged to any persons, belonged to those who were licensed as ferrymen, and not to the plaintiffs. The legal interest being in them, they should bring the action. 1 *Chitty on Pl.* 5, 6, 46. If the petition is to be taken, as part of the adjudication, then it was only to repair the first bridge, and the license had expired.

2. A corporation cannot be licensed to keep a ferry, nor can any person hold a ferry in trust for others by the appointment of the Court of Sessions. *Revised stat. ch.* 176; *Day* v. *Stetson,* 8 *Greenl.* 365.

3. There was no proof, that those who were licensed as ferrymen consented to the sale, but it was shown, that one of them objected. As it was a sale of what did not belong to the plaintiffs, if there was any promise to pay it was to those who had the right, and not to the plaintiffs.

4. The right to keep the ferry was a personal trust, and not assignable. *Stat.* before cited; *Clinton* v. *Fly,* 1 *Fairf.* 292.

5. There was no competent evidence, that the plaintiffs, a bridge corporation, ever consented to take charge of the ferry or ferry-boat, or to sell the right to use them, or that they authorized the bringing the suit. 7 *Mass. R.* 102; 8 *Mass. R.* 292; 10 *Mass. R.* 397; 17 *Mass. R.* 29.

6. The plaintiffs have no right by their act of incorporation to accept a license of a ferry, or take the profits of it. *Special Laws of* 1821, *ch.* 69; *Head* v. *Prov. Ins. Co.* 2 *Cranch,* 127; *First Par. in Sutton* v. *Cole,* 3 *Pick.* 232; *Kent's Com.* 2*d. Ed.* 298.

7. The boat belongs to the persons to whom the ferry belongs, because it was paid for out of the proceeds of the ferry.

8. But if the plaintiffs owned the boat, they could not recover for the use of it, unless they owned the ferry, the contract for ferry and boat being one entire contract. *Stark* v. *Parker,* 2 *Pick.* 267.

*Boutelle,* for the plaintiffs.

As the commissioners did not license the corporation, it becomes unimportant to inquire, whether it was, or was not within their power to do it. The directors, as individuals, were licensed for the benefit of the corporation, and were bound to pay the

Ticonic Bridge v. Moor.

profits to the plaintiffs. The plaintiffs then had the beneficial interest in the ferry, though they were not the ferrymen. The defendant had the ferry during the time, and made an express promise to the plaintiffs, who were entitled to receive the profits, to pay them. Here was an actual benefit to the defendant, and an express promise to the plaintiffs. Those beneficially interested may support an action on an express promise. *Trustees of M. & S. fund in Levant v. Parks,* 1 *Fairf.* 441 ; *Fisher* v. *Ellis,* 3 *Pick.* 322; *Mowry* v. *Todd,* 12 *Mass. R.* 281. The defendant hired of the plaintiffs, and is estopped to deny their right. *Merrill* v. *Merrill,* 3 *Greenl.* 463. This was not an assignment of the ferry to the plaintiffs, but merely an appointment of them to receive the profits, in discharge of their duty as ferrymen. Even if the law would not have permitted the plaintiffs to have enforced their claim against the ferrymen, the defendant cannot object. Rights of this description cannot be tried in actions between third persons. Whatever some old books may say, the law is now settled, that corporations are bound by corporate acts without vote. *Wor. Turnp. Cor.* v. *Willard,* 5 *Mass. R.* 80 ; *Salem Bank* v. *Gloucester Bank,* 17 *Mass. R.* 29 ; *U. S. Bank* v. *Dandridge,* 12 *Wheat.* 64 ; *Peters* v. *Ballistier,* 3 *Pick.* 495 ; *Copeland* v. *Mercantile Ins. Co.* 6 *Pick.* 198 ; *Proprs. Canal Bridge* v. *Gordon,* 1 *Pick.* 297.

The action was continued for advisement, and the opinion of the Court was afterwards drawn up by

EMERY J. — The exceptions are to the instructions of the Judge, that the said *Asa Redington* and others, the directors of said corporation, having been appointed ferrymen, for the purpose of receiving the proceeds of the tolls in trust for and to the use of the plaintiffs, to aid in building said bridge ; the plaintiffs could maintain this action, there being an express contract on the part of the defendant, and the proceeds of the ferry, previous to the removal of said *Redington* and others as ferrymen, having been received by the defendant. And also that the plaintiffs were entitled to receive for the use of the boat during the time, that the defendant used the same as stipulated in said contract, provided the jury were satisfied that the contract was, that the defendant

should pay for said ferry and boat, for the proportions of the time, that he used the same, but not otherwise ; that no memorandum signed by the defendant or the auctioneer was necessary, in as much as the defendant had the use of the ferry and boat ; and that the bringing of the action was a ratification of the plaintiffs of the acts of the directors in causing the use of the ferry and boat to be sold.

In consequence of the destruction of a very considerable part of *Ticonic Bridge* by a freshet in 1826, application was made to the Court of Sessions to establish a ferry across the river between *Waterville* and *Winslow*. The application was made by the directors of the corporation, and it was said it would not seem unreasonable to ask that the profits of the ferry should be appropriated to the use of the proprietors of the bridge toward making the repairs of the bridge, and they prayed the court to license them to keep the ferry, it being understood, that they shall account with said proprietors for the net profits of the same, they giving bonds as the law directs.

At the *April Term*, 1826, after mature deliberation, the court granted the prayer of the petition, and these directors were by name appointed ferrymen and were authorised to receive the same rates of ferriage as were there last established.

The license to those gentlemen who were directors, was taken away by the Court of County Commissioners in 1833, and another person was appointed ferryman.

In 1832, the bridge was carried away and the directors of the bridge employed a ferryman to take charge of the ferry for said corporation who did so for that season, and who by direction of the plaintiffs built for them the boat about which this suit is instituted. It was paid for out of the tolls received from the ferry by the plaintiffs' consent to whom the balance was paid. The right to use the ferry and boat was sold at public auction by an auctioneer acting for the plaintiffs.

The suit is brought for the use of the ferry and boat from the 13th of *April*, 1833, to the 17th of *May*, 1833.

The license having been granted to the persons named, with the evident design of benefit to the corporation, every incidental power necessary to the enjoyment of the right must be intended

to follow.   The right to take toll would be unavailing if they could not procure a boat.

We do not consider, that any minute inquiry as to the act of incorporation is requisite to determine the rights of the parties in the present controversy.   The defendant has realized all the benefits he expected.

The direction of the Judge limited the jury to be satisfied, that the contract was to pay for the ferry and boat for the proportions of the time that he used the same, but not otherwise.

They have found that it was so.

And we do not perceive error in the instructions of the Judge upon the facts reported.

The exceptions are overruled.   There must be judgment on the verdict.